

# THE ATTORNEY GENERAL
# OF TEXAS

GROVER SELLERS

~~WILL WILSON~~

ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable O. P. Lockhart, Chairman
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-6036

Re: Whether debentures created by the authority of indentures or trust agreements which contain any of the several provisions for additional indebtedness, mentioned herein, are eligible for investment under Art. 4725, Vernon's Annotated Civil Statutes.

Your letter of May 17, 1944, requesting the opinion of this department regarding the matters stated therein, is in part, as follows:

"Please see the amendment by the Forty-eight Legislature to Article 4725 as follows:

". . . I find that the greater portion of indentures or trust agreement authorizing issuance of debentures for sale to the investing public contain provisions to the effect that if liens are subsequently created against the properties covered by the debentures, the latter shall become equally and ratably secured with the subsequent obligations and that the terms of the indentures may be amended with the consent of more than two-thirds in value of outstanding debentures. Attached you will please see copied excerpts from statements included in Moody's report on industrial securities, which may be accepted for the purpose of this inquiry as an accurate statement of the terms of the indentures.

"Will you please advise me whether debentures created by authority of indentures or trust agreements which contain any of the several provisions for additional indebtedness as set out on the enclosed copied excerpts are eligible for investment under Article 4725 as amended."

Art. 4725, Vernon's Annotated Civil Statutes, provides:

"A life insurance company organized under the laws of this State may invest in or loan upon the following securities, and none others, viz:

"1. It may invest any of its funds and accumulations in the bonds of the United States or of any state, county, or city of the United States; or in any bonds, or interest-bearing warrants issued by authority of law by any county, city, town, school district or other municipality or sub-division or by any educational institution of the State of Texas which is now or hereafter may be constituted or organized under the laws

of this state, and is authorized to issue such bonds and warrants under the Constitution and laws of this state, provided legal provision has been made by a tax to meet said obligations, or in the bonds and warrants of any educational institution of the State of Texas, or any municipally owned water system or sewer system when special·revenues to meet the principal and interest payments as they accrue upon such obligations shall have been appropriated, pledged or otherwise provided by such municipality or educational institution; or in any paving certificates issued by any city in the State of Texas and secured by a first lien on real estate; or in bonds issued under and by virtue of the Federal Farm Loan Act approved July 17, 1916, when such bonds are issued against and secured by promissory notes or obligations, the payment of which is secured by mortgage, deed of trust or other valid lien upon unencumbered real estate situated in this state; or in first mortgage bonds on real or personal property of any solvent corporation, and which has not at any time within a period of five (5) years defaulted in the payment of any of its debts; or, in the debentures of any such corporation with a capital stock of not less than Five Million ($5,000,000.00) Dollars where no lien exists, or under the provisions of the indenture providing for the issuance of such debentures, can be created against the real or personal property owned by such corporation at the time the debentures were issued; but in no event shall the amount of such investment in the bonds or debentures of any one such corporation exceed (5%) per cent of the admitted assets of the insurance company making the investment; or in interest-bearing notes or bonds of the University of Texas issued under and by virtue of Chapter 40, Acts of the 43rd Legislature, Second Called Session.

"2. It may loan any of its funds and accumulations, taking as security therefor such collateral as under the previous subdivision it may invest in. It may also make loans upon first liens upon real estate, the title to which is valid and the value of which is forty (40%) per cent more than the amount loaned thereon, or upon first liens upon leasehold estates in real property and improvements, situated thereon, the title to which is valid, and the leasehold has not less than thirty (30) years to run before expiration; provided that the duration of any loan upon such leasehold estates shall not exceed a period of ten (10) years; or upon any obligations secured collaterally by any such first liens. If any part of the value of such real estate is in buildings, such buildings shall be insured against loss by fire for at least fifty (50%) per cent of the value thereof with loss clause payable to such company. It may also make loans upon the security of or purchase of its own policies. No loan on any policy shall exceed the reserve value thereof. No investment or loan, except policy loans, shall be made by any such insurance company, unless the same shall first have been authorized by the Board of Directors or by a committee charged with the duty of supervising such investments or loans. No such company shall subscribe to, or participate in, any underwriting of the purchase or sale of securities or property, or enter into any such transaction for such purpose, or sell on account of such company jointly with any other person, firm or corporation; nor

shall any such company enter into any agreement to withhold from sale any of its property, but the disposition of its property shall be at all times within the control of its Board of Directors; provided that the provisions of this sub-division as to the value of the real estate compared to the amount loaned thereon and as to the duration of such loan shall not apply to loans secured by real estate which are insured under the provisions of Title II of the "National Housing Act", enacted by the Congress of the United States and approved by the President June 27, 1934.

"3. Any life insurance company of the state, for the purpose of investing its capital and surplus or any part thereof, over and above the amount of its reserves, may purchase and hold as collateral security, or otherwise, and sell and convey the capital stock, bonds, bills of exchange or other commercial notes or bills and securities of any solvent dividend paying corporation which has not defaulted in the payment of any of its obligations for a period of five (5) years, the current market value of which such stock, bonds, bills of exchange or other commercial notes or bills and securities shall be at all times during the continuance of such loan at least fifty (50%) per cent more than the sum loaned thereon; provided that no such company shall loan or invest in its own stock, nor more than five (5%) per cent of the amount of its capital and surplus in the stock of any corporation, and provided further that no such company shall invest any of its funds in any stock on account of which the holders or owners thereof may in any event, be or become liable to any assessment except for taxes, nor in the stock of any oil company or manufacturing company unless such corporation has capital stock of not less than Five Million ($5,000,000.00) Dollars and unless such corporation has paid dividends for a period of five (5) years and has not defaulted in the payment of any of its debts for a period of five (5) years.

"That in any case in which a life insurance company organized under the laws of this state, shall reinsure the business and take over the assets of another life insurance company, either domestic or foreign, all investments of such re-insured company that were authorized, when made, by the laws of the state in which it was organized, as proper securities for investment of the funds of a life insurance company, and which are taken over by such re-insuring company, shall be considered as valid securities of such re-insuring company under the laws of this state, provided such investments are approved by the Board of Insurance Commissioners of this state, and same are taken over on terms satisfactory to said Board; and upon the condition that the Board of Insurance Commissioners shall have the power to require the re-insuring company to dispose of such investments upon such notice as it may deem reasonable."

Hon. Lewis T. Carpenter, Vice President and General Counsel of Southland Life Insurance Company, Dallas, Texas, and Hon. Chas. Francis, of the law firm of Vinson, Elkins, Weems & Francis, of Houston, Texas, have presented briefs regarding the matters under consideration which have materially aided us in passing upon the questions presented. We thank these gentlemen for these briefs.

Art. 4725, supra, was amended by the 48th Legislature, Regular Session, 1943, p. 192, Chapter 11, and it is apparent that it was the intent of the Legislature to enlarge the investment field of life insurance companies to include debentures of large corporations. We believe that the setting of a $5,000,000.00 capitalization leads to the conclusion that the Legislature desired to place its stamp of approval on debentures of large corporations in control of large amount of assets requiring $5,000,000.00 in capital stock.

Referring to the term "debentures", it is stated in Corpus Juris Secundum, Vol. 25, page 1301:

"It has been said that there is not any precise legal definition of the term, and it is not in either law or commerce a strictly technical term, or what is called a term of art. It has, however, been used by lawyers frequently with reference to instruments under certain statutes; and a debenture, although never legally defined, is included under one or three descriptions; first, as a simple acknowledgment under seal of the debt, Second, an instrument acknowledging the debt and charging the property of the company with repayment. Third, an instrument acknowledging the debt, charging the property of the company with repayment and further restricting the company from giving any prior charge. Having in mind this classification, the term may be said to signify a debt; an acknowledgment of a debt, in the nature of a bond or bill, etc.; a promise to pay a fixed sum of money; a security or promise to pay, for a loan of money issued by a public company, usually creating a charge on the whole or a part of the company's stock and property, although not necessarily in the form of a mortgage; an agreement by which a right in equity to a charge or security on personal chattels as conferred; an instrument, generally under seal, for the repayment of money lent, usually, if not exclusively, used for obligations of corporations or large monied co-partnerships, issued in a form convenient to be bought and sold as investments; an instrument importing an obligation or covenant to pay, in most cases as the present day accompanied by some charge or security, although as has been said, the word does not necessarily imply a secured debt or claim, but, from the context, it may be construed as doing so, the nature of the obligation following the terms of agreement or plan under which it was issued; an instrument in the nature of a mortgage to secure a certain sum of money, with interest, to which coupons are attached, making the interest payable, the term debenture including the entire instrument of obligation, consisting in the body wherein is set forth the obligation as to repayment of the principal sum, together with coupons attached thereto. . ."

In the case of Lorimer vs. McGreevy, 84 S. W. 2d 667, (Kansas City Court of Appeals, Mo.) quoting from the work entitled "Green Brice's Ultra Vires" (2d Am. Ed.) page 230, it is said that:

"Debentures may be defined as instruments under seal, creating a charge according to their wording upon the assets specified therein

of the corporation, and, to that extent, conferring upon the grantees a priority over other subsequent creditors or existing creditors not possessed of such a charge. Under this term, however, are often included two other varieties of instruments which do not answer this definition strictly. There are consequently three varieties of debentures: 1. Instruments which do not confer a charge, and which are nothing more nor less than ordinary bonds and ought to be so styled. II. Debentures in the true and proper sense. III. Instruments which contain more than a mere charge, which are mortgages in fact, and which, from possession in addition thereto, the characteristics of debentures, may be for convenience, and often are called mortgage debentures."

In the case of Masonic Temple Corporation vs. Harris, 242 Ill. App. 296, it is said:

"A debenture is a debt; an acknowledgment of a debt, in nature of a bond or bill; a writing acknowledging a debt; a document which either creates a debt or acknowledges it; an instrument which shows that party owes and is bound to pay; an instrument generally under seal, for the repayment of money lent; the word being usually used of obligations of corporations or large monied copartnerships, issued in form convenient to be bought and sold as investment; an investment importing an obligation or covenant to pay, in most cases now accompanied by some charge or security; an agreement by which a right in equity to charge or secure on personal chattels conferred; an instrument in nature of mortgage to secure a certain sum of money, with interest, to which coupons are attached... . they may be simple acknowledgments or promises to pay, like promissory notes; they differ from a mortgage in not conferring legal title or any ordinary right of ownership, and are at most only equitable mortgages, conferring only equitable rights; . . ."

The foregoing definitions and statements regarding the term "debentures" are stated merely for the purpose of showing how such term is ordinarily used and understood. We must assume that the Legislature used the term "debentures" in Art. 4725 as that term is ordinarily used and understood.

The term "debentures" as used in Art. 4725, supra, means, we believe, an obligation which is not secured by a first mortgage on the real or personal property of the corporation of the kind described in said statute. Apparently, the Legislature intended to permit the purchase of such unsecured debentures where: no lien exists; or where none "can be created against the real or personal property owned by such corporation at the time the debentures were issued." It is apparent that at the time of the execution of the indentures or trust agreements for said debentures, it must be presumed that there is no lien or other secured debt owed by the corporation. Thus with the issuance of the debentures, all property of the corporation, both real and personal, becomes subject to the payment of the debts created by such debentures. As long as no

lien exists, or, as provided by said statute, none can be created against the real or personal property owned by such corporation at the time the debentures were issued, there would be no question whatsoever but that such investments are perfectly valid and legal under Art. 4725, supra. However, when a lien is created subsequent to the issuance of the debentures, then the status of these debentures becomes important to the Board of Insurance Commissioners as to the legality of same as investments and the security offered thereby. We believe that no greater protection could be afforded to the holders of these debentures than a specific provision contained in the debentures or trust agreements creating said debentures inhibiting the creation of any further lien without these debentures equally and ratably becoming secured. If under an indenture, a corporation can subsequently issue bonds and give security for those bonds without ratably securing the outstanding debentures, then such types of debentures are not eligible for purchase. If, however, outstanding debentures can be made into first mortgage bonds, by reservations contained in the indenture or trust agreements creating debentures, such type of debentures are eligible for purchase because they conform to the requirement of the act because no lien exists when the debentures are issued and hence the owner has the protection of unmortgaged assets. When under the reservations of the indenture, or trust agreement, a lien is given which ratably secures such debentures, they become first mortgage bonds and hence are eligible under the statute as it read prior to the 1943 amendment. The reservations in the indentures, or trust agreements, do not permit a corporation to deprive the debenture holder of his rights against corporate property as it existed at the time the debentures were issued. The corporation can strengthen such rights by giving a specific and ratable lien. When this is done, the unsecured debentures become first mortgage bonds, and in either event, are eligible for investment by life insurance companies.

We do not deem it necessary to quote the excerpts accompanying your request as we believe that the following statement is sufficient to answer your request. In other words, if the debentures mentioned meet the requirements hereinafter stated, then they are eligible for investment, if they do not meet the requirements, they are not eligible for investment under Art. 4725, supra.

It is our opinion that debentures created by authority of indentures or trust agreements are eligible for investment under Art. 4725, supra, where no lien exists or where none can be created against the real or personal property owned by such corporation at the time the debentures were issued and when the lien is created subsequently to the issuance of the debentures, such debentures are eligible for investment under said statute when they are equally and ratably secured. In other words, such debentures are eligible for an investment under Art. 4725, as above stated, where no lien exists, or where none can be created against the real or personal property owned by such corporation at the time the debentures were issued, or when a lien is created subsequently to the issuance of

such debentures, if such debentures are equally and ratably secured, then they also are eligible for investment.

Very truly yours

ATTORNEY GENERAL OF TEXAS


By  /s/ Ardell Williams
        Ardell Williams
            Assistant

AW:rt:lm


APPROVED JUN 27, 1944

/s/ Geo. P. Blackburn

(ACTING) ATTORNEY GENERAL OF TEXAS


APPROVED
OPINION
COMMITTEE
BY /s/ ALM
CHAIRMAN